1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

REAL PROPERTY LOCATED AT
2731 BOYLSTON AVENUE EAST,
UNIT 301, SEATTLE, WASHINGTON,
KING COUNTY PARCEL NO. 638980-
0050; KING COUNTY PARCEL NO.
168350-0140, TOGETHER WITH ITS
BUILDINGS, IMPROVEMENTS,
APPURTENANCES, FIXTURES,
ATTACHMENTS AND EASEMENTS,

Defendant.

CASE NO.  C15-143

VERIFIED COMPLAINT FOR
FORFEITURE *IN REM*

COMES NOW, the United States of America, by and through Annette L. Hayes,

Acting United States Attorney for the Western District of Washington, and Richard E.

Cohen, Assistant United States Attorney for said District, and alleges:

## I.    NATURE OF THE ACTION

1.    This is a complaint for forfeiture *in rem* against the above-captioned defendant

real property pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in violations of 18

Verified Complaint for Forfeiture *in Rem*
*U.S. v. Real Property Located at 2731 Boylston Ave. East # 301*

1  U.S.C. § 1956(a)(1)(B)(i) (Money Laundering) and pursuant to 18 U.S.C. § 981(a)(1)(C) as

2  property constituting or traceable to violations of 18 U.S.C. §1343 (Wire Fraud).

3        2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1345 and

4  28 U.S.C. § 1355.

5        3.    This Court has venue pursuant to 28 U.S.C. § 1395 and 28 U.S.C. § 1355.

6                  **II.     THE DEFENDANTS *IN REM***

7        4.    The Defendant Property is now and during the pendency of this action will be

8  in the jurisdiction of this Court, and, is described as the real property located at 2731

9  Boylston Avenue East, Unit 301, Seattle, Washington, King County Parcel No. 638980-

10  0050, together with its buildings, improvements, appurtenances, fixtures, attachments and

11  easements, more particularly described as:

12          UNIT 301, ONE CONDOMINIUM, SURVEY MAP AND PLANS RECORDED IN
13          VOLUME 239 OF CONDOMINIUMS, PAGES 84 THROUGH 86, INCLUSIVE,
        AND AMENDMENTS THERETO, IF ANY, CONDOMINIUM DECLARATION
14          RECORDED UNDER RECORDING NUMBER(S) 20070827000493, AND
15          AMENDMENTS THERETO, IF ANY, IN KING COUNTY, WASHINGTON

16  (hereinafter referred to as the "Defendant Property").

17              **III.    LEGAL BASIS FOR FORFEITURE**

18        5.    Pursuant to 18 U.S.C. §1343, an individual commits wire fraud when having

19  devised or intending to devise any scheme or artifice to defraud, …transmits or causes to be

20  transmitted by means of wire … communication in interstate or foreign commerce, any

21  writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or

22  artifice.

23        6.    Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which

24  constitutes or is derived from proceeds traceable to any offense constituting "specified

25  unlawful activity" as defined in 18 U.S.C. §1956(c)(7), of which Wire Fraud is one, is

26  subject to forfeiture to the United States.

27

28

Verified Complaint for Forfeiture *in Rem*
*U.S. v. Real Property Located at 2731 Boylston Ave. East # 301*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

7.      Pursuant to 18 U.S.C. § 1956(a)(1)(B)(i), an individual commits Money Laundering when he or she engages in a financial transaction knowing that the property involved represents the proceeds of some form of unlawful activity and that said transaction is knowingly designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of a specified unlawful activity.

8.      Pursuant to 18 U.S.C. § 981(a)(1)(A) – " Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956…, or traceable to such property," is subject to forfeiture.

## IV. FACTUAL BASIS FOR FORFEITURE

9.      The facts and circumstances in support of the forfeiture of the defendant real property are set forth in the attached affidavit of Special Agent Benjamin Williamson, Federal Bureau of Investigation (FBI), which is incorporated as if fully set forth herein, and is attached hereto as "Exhibit A."

## IV.      GROUNDS FOR RELIEF

10.      By reason of the foregoing, the United States alleges that the Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in violations of 18 U.S.C. § 1956(a)(1)(B)(i) (Money Laundering) and pursuant to 18 U.S.C. § 981(a)(1)(C) as property constituting or traceable to violations of 18 U.S.C. §1343 (Wire Fraud).

//

//

//

Verified Complaint for Forfeiture *in Rem*
*U.S. v. Real Property Located at 2731 Boylston Ave. East # 301*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   WHEREFORE, the United States requests that due process issue to enforce the

2   forfeiture of the Defendant Property, that due notice be given to all interested persons to

3   appear and show cause why forfeiture of the Defendant Property should not be decreed, that

4   the Defendant Property be condemned as forfeited to the United States to be disposed of

5   according to law, and for such other and further relief as the Court may deem just and

6   proper.

7   DATED this 29th day of January, 2015.

8                                                 Respectfully submitted,

9

                                                  ANNETTE L. HAYES
10                                                Acting United States Attorney

11

12                                                RICHARD E. COHEN

13                                                Assistant United States Attorney
                                                  700 Stewart Street, Suite 5220
14                                                Seattle, WA 98101
                                                  Telephone: (206) 553-2242
15                                                Fax: (206) 553-6934
16                                                Email: Richard.E.Cohen@usdoj.gov

17                                                *Attorney for Plaintiff United States*

18

19

20

21

22

23

24

25

26

27

28

Verified Complaint for Forfeiture *in Rem*
*U.S. v. Real Property Located at 2731 Boylston Ave. East # 301*

1

## VERIFICATION OF COMPLAINT

2

3  STATE OF WASHINGTON        )

4                             )        ss

5  COUNTY OF KING             )

6

7      I, Benjamin Williamson, declare under penalty of perjury that the following is true

8  and correct to the best of my knowledge:

9      I am a Special Agent with the Federal Bureau of Investigation and am assigned to

10 this case.  I have read the attached Complaint and know the contents thereof; I have

11 furnished the information contained in the foregoing Complaint based upon my own

12 investigation and that of other reliable official Government sources; and, based on

13 information and belief, the allegations contained in the Complaint are true.

14

15

16

17     Benjamin Williamson, Special Agent

    Federal Bureau of Investigation

18

19

20     SUBSCRIBED and SWORN to before me this 29th day of January, 2015, by

21 Benjamin Williamson.

22

23

24     Print: Anna Chang

25     Notary Public in and for the

    State of Washington, residing

26     at King County

    Expires: 9/10/2015

27

28

Verified Complaint for Forfeiture *in Rem*
U.S. v. Real Property Located at 2731 Boylston Ave. East # 301

# EXHIBIT A

Affidavit of Special Agent Benjamin Williamson

1 | **AFFIDAVIT**

2 | STATE OF WASHINGTON      )
3 |                         )      ss
  | COUNTY OF KING          )

4 |

5 | I, Benjamin Williamson, having been duly sworn, state as follows:

6 | **AFFIANT BACKGROUND**

7 | I am a Special Agent with the Federal Bureau of Investigation (FBI), assigned to the

8 | White Collar Crime Squad of the Seattle, WA Headquarters Field Office. I have been a

9 | Special Agent for eight years. During this time, I have investigated violations of federal

10 | statutes governing various types of white collar crime, including wire fraud, mail fraud, bank

11 | fraud, securities fraud, money laundering, and theft of government and public money.

12 | Prior to working for the FBI, I was a United States Army Infantry and Intelligence Officer.

13 | In the scope of my duties as an FBI agent, within the meaning of Rule 41(a) of the Federal

14 | Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the

15 | criminal laws of the United States, I am authorized to request the issuance of a federal

16 | seizure warrant.

17 | **INTRODUCTION AND PURPOSE OF AFFIDAVIT**

18 | 1.    I make this Affidavit in support of a civil complaint for the forfeiture of

19 | the following as subject to forfeiture pursuant to Title 18, United States Code,

20 | Sections 981(a)(1)(A) and (C), for the following asset: the real property located as

21 | 2731 Boylston Avenue East, Unit 301, Seattle, WA 98102, , King County Parcel No.

22 | 638980-0050, titled in the name of [Cory Greer], together with its buildings,

23 | improvements, appurtenances, fixtures, attachments and easements, more particularly ,

24 | described as:

25 | UNIT 301, ONE CONDOMINIUM, SURVEY MAP AND PLANS RECORDED
   | IN VOLUME 239 OF CONDOMINIUMS, PAGES 84 THROUGH 86,
26 | INCLUSIVE, AND AMENDMENTS THERETO, IF ANY, CONDOMINIUM
27 | DECLARATION RECORDED UNDER RECORDING NUMBER(S)

28 |

AFFIDAVIT OF SPECIAL AGENT BENJAMIN WILLIAMSON
*U.S. v. Real Property Located at 2731 Boylston Ave. East # 301* - 1

1  20070827000493, AND AMENDMENTS THERETO, IF ANY, IN KING
2  COUNTY, WASHINGTON

3  (hereinafter referred to as the "SUBJECT RESIDENCE").

4      2.      The information set forth in this affidavit is based on my own
5  investigation, as well as information related to me by others, including other law
6  enforcement officers.  Because this affidavit is submitted for the limited purpose of
7  instituting a civil forfeiture action, it does not detail each and every fact and circumstance
8  I or others have learned during the course of this investigation.

9      3.      Based on the information set below, I respectfully submit that there is
10  probable cause to believe that the SUBJECT RESIDENCE constitutes property traceable
11  to the proceeds of violation of 18 U.S.C. §1343 (Wire Fraud), and further constitutes
12  property involved in transactions in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Money
13  Laundering).

14  **LEGAL AND FACTUAL PREDICATE OF WIRE FRAUD AND MONEY**
15  **LAUNDERING**

16      4.      Pursuant to 18 U.S.C. §1343, an individual commits wire fraud when
17  having devised or intending to devise any scheme or artifice to defraud, …transmits or
18  causes to be transmitted by means of wire … communication in interstate or foreign
19  commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing
20  such scheme or artifice.  Wire Fraud requires the existence of a scheme to defraud, the
21  use of a wire to further that scheme, and a specific intent to defraud.  *United States v.*
22  *Pelisman*, 641 F.3d 399, 409 (9th Cir. 2011).  A wire communication is "in furtherance"
23  of a fraudulent scheme if it is "incident to the execution of the scheme."  *United States v.*
24  *Lo*, 231 F.3d 471, 478 (9th Cir. 2000).

25      5.      Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which
26  constitutes or is derived from proceeds traceable to any offense constituting "specified
27  unlawful activity" as defined in 18 U.S.C. §1956(c)(7), of which Wire Fraud is one, may
28  be seized and is subject to forfeiture to the United States.

AFFIDAVIT OF SPECIAL AGENT BENJAMIN WILLIAMSON
*U.S. v. Real Property Located at 2731 Boylston Ave. East # 301* - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

6.     Pursuant to 18 U.S.C. § 1956(a)(1)(B)(i), an individual commits Money Laundering when he or she engages in a financial transaction knowing that the property involved represents the proceeds of some form of unlawful activity and that said transaction is knowingly designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of a specified unlawful activity.

7.     Pursuant to 18 U.S.C. § 981(a)(1)(A) – " Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956…of this title, or traceable to such property," is subject to forfeiture.

## SUMMARY OF PROBABLE CAUSE IN SUPPORT OF CIVIL COMPLAINT FOR FORFEITURE

### Overall Scheme of the Fraud Against Fairplay

8.     WILLIAM WIDMER caused a financial loss of $650,000.00 to Fairplay Funding NW, LLC through a fraudulent real estate transaction involving a property WIDMER owned.  WIDMER orchestrated a fraudulent and fictitious loan from Fairplay Funding NW, LLC to an unwitting borrower in order to obtain funds to help pay off his existing mortgages on the property, and transfer the property to an associate as repayment of a previous debt.  WIDMER concealed his ownership of the property from Fairplay Funding NW, LLC throughout the process, and disguised the proceeds of his fraud as a legitimate sale of the property to his associate.

### Development of Condominium at 2731 Boylston Avenue East, Seattle, Washington

9.     On April 21, 2004, Utopia Development, LLC was registered in Washington State.  WIDMER was listed as the Manager and Registered Agent of the company.  The address given for WIDMER was 11509 Juanita Drive Northeast, Kirkland, Washington.  On December 15, 2004, Utopia Development LLC received a construction loan from Regal Financial Bank to develop a five unit condominium located at 2731 Boylston Avenue East, Seattle, Washington 98102.  In August 2007, One Condominium Association was established as a non-profit corporation to manage the renovated condominium.   Utopia Development LLC recorded the Declaration and

AFFIDAVIT OF SPECIAL AGENT BENJAMIN WILLIAMSON
U.S. v. Real Property Located at 2731 Boylston Ave. East # 301 - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Covenants, Conditions, and Restrictions for the Association on August 21, 2007.

2   WIDMER signed the declaration as the Manager of Utopia Development LLC.

3   WIDMER was also listed as the Vice President of One Condominium Association.

4       10.     On August 31, 2007, Utopia Development LLC filed a Quit Claim Deed on

5   Unit 301 of this condominium, conveying its interest to WIDMER as his separate estate.

6   This unit, referred to as the SUBJECT RESIDENCE, is the entire third story unit of the

7   five unit condominium building.  The King County Assessor's website revealed the

8   SUBJECT RESIDENCE is a 1,918 square foot unit with three bedrooms and three

9   bathrooms.  The SUBJECT RESIDENCE includes an underground parking space, and

10  overlooks Lake Union and the Olympic Mountain Range to the west.  WIDMER's wife,

11  M.W., also filed a Quit Claim Deed on August 23, 2007, conveying her interest in the

12  SUBJECT RESIDENCE to WIDMER.  On October 5, 2007, WIDMER received a

13  $1,000,000.00 loan from Indymac Federal Savings Bank (FSB), secured by a Deed of

14  Trust for the SUBJECT RESIDENCE.  In January 2008, WIDMER received a Home

15  Equity Line of Credit for $150,000.00 from Flagstar FSB, also secured by the SUBJECT

16  RESIDENCE.

17  *Background of Fairplay Financial, Inc.*

18      11.     Widmer founded Fairplay Financial, Inc. in 2009, where he was the

19  President and Chief Executive Officer.  The main corporate office of Fairplay Financial,

20  Inc. was located at 5250 Carillon Point, Kirkland, WA 98033.  Fairplay Financial, Inc.

21  provided financing, management, and brokerage services to clients looking to construct,

22  purchase, renovate, manage, lease and sell distressed real estate for investment purposes.

23  Distressed real estate consisted of properties purchased out of a foreclosure sale process,

24  real estate owned by financial institutions ("REO"), or properties that were in the short

25  sale process.  Fairplay Financial, Inc. had evolved from similar companies run by

26  WIDMER called Oregon Funding Group, LLC and Investment Capital Group, LLC.

27  Fairplay Financial, Inc. had subsidiary companies to manage each of the services it

28  provided, and serviced clients located in Oregon and Washington State.  Fairplay

AFFIDAVIT OF SPECIAL AGENT BENJAMIN WILLIAMSON
*U.S. v. Real Property Located at 2731 Boylston Ave. East # 301 - 4*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Funding NW, LLC (Fairplay) was a subsidiary of Fairplay Financial, Inc. which provided

2  bridge and construction loans to qualified borrowers wishing to invest in distressed real

3  estate.  According to Fairplay's business plan and other promotional documents,

4  Fairplay's typical loans were 65% to 80% of the wholesale purchase price or 55% to 65%

5  of best estimate retail values, and secured by a first position on the deed of trust,

6  guaranteed by the borrower.  Fairplay typically charged a 4% loan fee on top of a 12%

7  annual interest rate on the loan.  Fairplay claimed the loans they financed had an average

8  duration of 120 days.  Fairplay Financial, Inc. and its subsidiary companies were

9  capitalized both by warehouse lines of credit from several financial institutions, as well as

10  debt investments from private investors.  Debt investments from investors were made in

11  the form of loans to Fairplay, with an annual interest rate of 12%, which were guaranteed

12  by Fairplay Financial, Inc. with a full repayment of the principle balance within 30 days

13  of a written request by the investor.

14  *Formation of Ataro, LLC*

15       12.    Public records showed that Ataro, LLC was registered in Washington State

16  on July 31, 2013.  The records indicate the manager of the company is C.G. [Manager],

17  and lists the mailing address and business location of the company at 2400 Elliott

18  Avenue, #305, Seattle, Washington.  Records revealed this address to be the residence of

19  the Manager.  The affiant reviewed the Company Agreement for Ataro, LLC, which was

20  effective August 1, 2013.  The agreement was entered into "by and among the Company,

21  (the Manager), the Trustee of the Dovev Trust dated August 1, 2013, its sole member,

22  and (the Manager) as Manager of the Company."  Article III of the agreement states the

23  business of Ataro, LLC is to invest in residential and commercial properties.   The

24  agreement was signed by the Manager as both Manager of Ataro, LLC and Trustee of the

25  Dovev Revocable Trust, and was dated August 1, 2013.

26  *Fraudulent Loan to R.Q. and ATR, LLC*

27       13.    In August 2013, WIDMER had a Fairplay loan processor named H.F.

28  [Loan Processer] create loan documents for a borrower to purchase the SUBJECT

AFFIDAVIT OF SPECIAL AGENT BENJAMIN WILLIAMSON
*U.S. v. Real Property Located at 2731 Boylston Ave. East # 301* - 5

RESIDENCE.  The Loan Processor told the affiant that WIDMER asked her to draw up loan documents for a loan to R.Q. [Borrower] for the purchase of the SUBJECT RESIDENCE.  WIDMER did not provide the Loan Processor with the Borrower's personal identification information or credit report, as was standard practice in preparing loan documentation.  WIDMER only told the Loan Processor the Borrower's name and purchase price.  The Loan Processor said WIDMER stood over her shoulder and made up the figures to enter into the loan worksheet.   WIDMER told the Loan Processor the Borrower owned a company called ATR, LLC, which was listed on the loan documents. The Loan Processor stated the Borrower had previously taken out several other loans from Fairplay for separate investment properties.  Public records revealed, however, that ATR, LLC has never been a registered company in Oregon or Washington State.

14.     The Loan Processor advised WIDMER took the loan documents to get signed, and returned to have a notary named J.S. [Notary] notarize the loan documents. The Loan Processor said the Borrower was not present when the Notary notarized the loan documents.  The Notary was interviewed by the affiant, and confirmed that she notarized the documents without the Borrower present.  The Notary stated WIDMER told her he needed the documents notarized right away, and it was okay to notarize the documents without the Borrower present because he was a good friend of WIDMER. The Notary knew the Borrower received previous loans from Fairplay, but said she notarized these loan documents without the Borrower present because WIDMER "had a way of making you feel that your job was in jeopardy if you didn't do what he wanted."

15.     The affiant reviewed copies of the Fairplay loan documents for the SUBJECT RESIDENCE.  The loan, dated August 9, 2013, loan number 2249, indicated the Borrower, through his business ATR, LLC, was to receive a $700,000.00 loan for a term of nine months to purchase the SUBJECT RESIDENCE.  The loan documents stated the purchase price of the property was $1,050,000.00, and that the Borrower was making a down payment of $350,000.00.  The Borrower was charged a 4% loan fee of $28,000.00 with a 12% interest rate per annum for the loan.  The loan worksheet

AFFIDAVIT OF SPECIAL AGENT BENJAMIN WILLIAMSON
U.S. v. Real Property Located at 2731 Boylston Ave. East # 301 - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

appeared to be signed by the Borrower. A promissory note was included with the loan documents. The note, dated August 9, 2013, also stated that ATR, LLC promised to pay Fairplay the principal sum of $728,000.00 with 12% interest per annum for repayment of a loan for the SUBJECT RESIDENCE. This document also appeared to be signed by the Borrower. The affiant also reviewed the Deed of Trust filed by Fairplay on August 9, 2013, which stated the SUBJECT RESIDENCE would be used as collateral for a loan from Fairplay to ATR, LLC for $728,000.00. The deed appeared to be signed by the Borrower on August 7, 2013, who was listed as the Manager for ATR, LLC. The address listed on the deed for ATR, LLC was 16489 Oak Tree Terrace, Oregon City, Oregon. A database search revealed this property was actually owned by a relative of WIDMER. A review of Fairplay's financial documents showed that Fairplay never received any money or payments from the Borrower related to a loan for the SUBJECT RESIDENCE.

16.     The affiant interviewed the Borrower regarding the loan. He advised he had been friends with WIDMER since they were in the fourth grade. The Borrower was shown copies of the loan documents, but advised that he had not signed any of them. The Borrower stated he had no knowledge this loan was done in his name. He also stated he had no knowledge of the existence of ATR, LLC, and did not register or own a company by that name. When the Borrower was contacted by Fairplay regarding this loan, the Borrower called WIDMER. WIDMER apologized to the Borrower for using his name on the loan. WIDMER told the Borrower he did not think the loan would have caused the Borrower any problems, or that the Borrower would have ever even known the loan was done in his name.

*Funds from Investor to Help Fund Fraudulent Loan*

17.     The affiant interviewed a private Fairplay investor named B.A. [the Investor], who said it was common for Fairplay to seek capital from investors in the form of short term loans to assist Fairplay in purchasing distressed properties on auction days. The Investor had previously invested $1,000,000.00 in Fairplay in 2012. The Investor advised that WIDMER asked him to provide Fairplay an additional short term loan of

AFFIDAVIT OF SPECIAL AGENT BENJAMIN WILLIAMSON
*U.S. v. Real Property Located at 2731 Boylston Ave. East # 301 - 7*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  $500,000.00 on or about August 8, 2013 for Fairplay to use to purchase properties at
2  auction. The Investor provided copies of text messages he received from WIDMER on
3  August 8, 2013 which discussed the loan. According to the text messages, WIDMER
4  requested the Investor to provide the funds via various denominations of cashier's
5  checks, which the Investor said was consistent with purchasing properties at auction. The
6  Investor, having received his investment's interest payments on time, agreed to provide
7  the funds on August 9, 2013, the day of the auction. The Investor stated he gave Fairplay
8  12 cashier's checks in varying denominations totaling $500,000.00. WIDMER told the
9  Investor the loan would have a two week term. The Investor stated after almost two
10 weeks passed, he had still not received a promissory note for his loan, and had not been
11 paid back as WIDMER promised. When the Investor asked WIDMER for repayment of
12 the loan, WIDMER delayed repayment for another several days. Fairplay's bank records
13 showed the Investor was eventually paid $507,301.36 on August 23, 2013 for repayment
14 of the loan, which included interest.

15       18.     The affiant interviewed A.M. [Accountant], who worked in the accounting
16 department at Fairplay's Vancouver, Washington branch. The Accountant recalled that
17 in August 2013, WIDMER was trying to fund a loan for a condominium that was
18 supposedly being sold at auction. The Accountant confirmed the condominium had the
19 same address as the SUBJECT RESIDENCE. The Accountant recalled WIDMER asking
20 the Investor for $500,000.00 to help fund the loan. WIDMER informed the accounting
21 department that the Borrower of the loan for the condominium was a company called
22 ATR, LLC.

23 *Fraudulent "Sale" of SUBJECT RESIDENCE to Ataro, LLC*

24       19.     The affiant reviewed the Fidelity National Title escrow file for the sale of
25 the SUBJECT RESIDENCE. In the file, there was an e-mail from a Fidelity National
26 Financial Escrow Assistant named K.S. [Escrow Assistant] to WIDMER, dated August 1,
27 2013, in which the Escrow Assistant stated, "I just wanted to touch base with you on your
28 transaction… As this transaction is a purchase and sale, we will need a contract on this in

AFFIDAVIT OF SPECIAL AGENT BENJAMIN WILLIAMSON
*U.S. v. Real Property Located at 2731 Boylston Ave. East # 301 - 8*

1  order to proceed and the attorney will need this as well." WIDMER responded the same

2  day stating, "There is no contract, we are simply transferring title. The buyer has already

3  paid for it. Do you want a purchase and sale at zero?" The Escrow Assistant then

4  responded, "After reviewing this with my manager we will need to have a signed

5  purchase and sale agreement with a purchase amount that you and the buyer have agreed

6  upon." The escrow documents showed the sale of the SUBJECT RESIDENCE occurred

7  on or about August 29, 2013, between the sellers, WIDMER and his wife, and the buyer,

8  Ataro, LLC. The escrow statements indicate a sale price of the SUBJECT RESIDENCE

9  of $550,000.00, however, the documents showed the sale price amount was credited from

10  WIDMER to the purchaser, Ataro, LLC, for repayment of a pre-existing debt. Ataro,

11  LLC did not actually pay WIDMER $550,000.00 for the purchase of the SUBJECT

12  RESIDENCE.

13       20.     The settlement statements showed that WIDMER provided $1,085,252.99

14  to pay off existing mortgages and fees for the sale of the SUBJECT RESIDENCE. This

15  payoff amount came from WIDMER through several wire transfers and cashier's checks.

16  A cashier's check from Columbia Bank, dated August 16, 2013, for $650,000.00,

17  purchased by Fairplay Funding NW, LLC, was included in the funds provided by

18  WIDMER to pay off the existing mortgages.

19  *Funding of Fraudulent Loan*

20       21.     Fairplay had an account with Columbia Bank, account number

21  7000528880, which it used to fund the purchases of investment properties for its

22  borrowers. The beginning balance of this account in August 2013 was $582,719.99.

23  Columbia Bank records showed that month, WIDMER deposited the $500,000.00 worth

24  of cashier's checks from the Investor into the account. An "Advice of Debit" form, dated

25  August 16, 2013, advised Fairplay of a debit of $650,000.00 from this account in the

26  form of a cashier's check made out to Fidelity National Title, which was requested by

27  WIDMER. Fairplay's Columbia Bank account statement also reflected this debit of

28  $650,000.00. The ending balance of the account for August 2013 was -$82,461.35.

AFFIDAVIT OF SPECIAL AGENT BENJAMIN WILLIAMSON
*U.S. v. Real Property Located at 2731 Boylston Ave. East # 301* - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

22.   The affiant reviewed a copy of the cashier's check, which is the same check WIDMER used to help pay off his mortgages on the SUBJECT RESIDENCE. The Accountant provided copies of an e-mail exchange between her and WIDMER dated August 23, 2013. In the e-mails, WIDMER told the Accountant that Fairplay would be sending the Investor a wire transfer of $507,000.00 for repayment of a deal the Investor funded. WIDMER stated, "The paper trail is last Friday you will see a 500K deposit and 650K withdrawl <sic>. 500K came from (the Investor), 650K from Fairplay Funding." The Accountant replied in an e-mail to WIDMER, "OK, I see the $650K that went out last Friday for loan 2249. According to the system, we should have given $700K to escrow. Is there another $50K I need to account for, or are we just adjusting the loan to reflect a $400K down payment and proceeds to escrow of $650K?" WIDMER replied, "That is correct, adjust down." This e-mail chain confirmed the $500,000.00 provided by the Investor was used with other funds to purchase the $650,000.00 used in the fraudulent sale.

*Interstate Nexus of Wire Transfers for "Sale" of SUBJECT RESIDENCE*

23.   The affiant reviewed two outgoing wire requests produced by Fidelity National Title, both dated August 29, 2013. The first requested $931,625.04 be wired from Fidelity National Title to JP Morgan Chase Bank, routing number 111000614, to credit Indymac Mortgage Services, account number 639262971 to pay off WIDMER's mortgage. The second requested $150,568.55 be wired from Fidelity National Title to Flagstar Bank, routing number 272471852, to credit Flagstar Bank, FSB, account number 2080500800061 to pay off WIDMER's Home Equity Line of Credit. The affiant reviewed two e-mails included in the escrow file confirming the successful wire transfers. The first e-mail confirmed $931,625.04 was successfully transferred by wire to a JP Morgan Chase Bank branch located in Dallas, Texas on August 29, 2013. The second e-mail confirmed $150,568.55 was successfully transferred to a Flagstar Bank branch located in Bloomfield Hills, Michigan on August 29, 2013. The $650,000.00 WIDMER fraudulently obtained from Fairplay was included in these payments.

AFFIDAVIT OF SPECIAL AGENT BENJAMIN WILLIAMSON
*U.S. v. Real Property Located at 2731 Boylston Ave. East # 301* - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Transfer of SUBJECT RESIDENCE from Ataro, LLC to C.G.*

24.    As a result of this transaction, as well as other activity not included in this Affidavit, WIDMER was fired as the CEO of Fairplay in September 2013. Fairplay subsequently filed for receivership. The affiant was notified by counsel for the receiver that in October 2013, Fairplay sued WIDMER and Ataro, LLC for damages related to this transaction. Counsel notified the affiant that Ataro, LLC agreed to settle with Fairplay out of court by paying Fairplay $550,000.00.

25.    The affiant reviewed a Quit Claim Deed, dated February 21, 2014, which conveyed all interest in the SUBJECT RESIDENCE from Ataro, LLC to the Manager. The affiant interviewed the Manager, who advised he was the Trustee for Ataro, LLC. He stated Ataro, LLC is owned by the Dovev Trust, whose Trustor is J.M. (Trustor). The Manager said WIDMER gave the SUBJECT RESIDENCE to the Trustor as repayment for a previous debt WIDMER owed to him. The Manager said he was unaware of any fraud committed on the part of WIDMER to obtain funds to pay off the loans for the SUBJECT RESIDENCE, but confirmed Ataro, LLC decided to settle with Fairplay for $550,000.00. The Manager stated he was getting a mortgage through North Pacific Financial Corporation to get the funds to pay Fairplay. The Manager stated he thought the SUBJECT RESIDENCE would be a good investment, because even though he was getting a mortgage for $550,000.00, the SUBJECT RESIDENCE had recently been appraised for approximately $800,000.00. The Manager said the Trustor would have trouble getting a mortgage as he was a convicted felon. The Trustor went to prison in 2007 for federal drug charges. The Manager said he did not know the specifics of the debt WIDMER owed to the Trustor, but the debt predated his federal conviction. The Manager said Ataro, LLC was set up for the purpose of conducting real estate business, but advised that the SUBJECT RESIDENCE was the only real estate transaction the company has performed. The Manager said the Trustor sometimes lives at THE SUBJECT RESIDENCE.

AFFIDAVIT OF SPECIAL AGENT BENJAMIN WILLIAMSON
*U.S. v. Real Property Located at 2731 Boylston Ave. East # 301* - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

26. The affiant reviewed court documents regarding the conviction of the Trustor, which revealed he was convicted in the Western District of Washington of Conspiracy to Distribute Marijuana, in violation of Title 21, U.S.C., Sections 841(a)(1), 841(b)(1)(C), and 846; and Conspiracy to Engage in Money Laundering, in violation of Title 18, U.S.C., Section 1956(h). As part of the scheme, the Trustor laundered over $500,000.00 of drug proceeds through a mortgage broker to invest in real estate, and used another $127,000.00 of drug proceeds to refinance a residential property in Kent, Washington.

*WIDMER's Continued Involvement With Ataro, LLC*

27. . Counsel for Fairplay told the affiant that Ataro, LLC initially provided $50,000.00 through a wire transfer from the attorney for Ataro, LLC. The affiant reviewed Banner Bank account number 5406025527 for Ataro, LLC. The account showed that three cashier's checks were deposited into the account on April 1, 2014. All three cashier's checks were dated January 24, 2014. Two of the cashier's checks were for $2,500.00 apiece. One of these cashier's checks was drawn from Wells Fargo, but did not show a remitter. The other $2,500.00 check was drawn from Union Bank and listed the remitter as WIDMER. The third check was also drawn from Union Bank for $20,000.00, and again showed the remitter as WIDMER. The account also showed an outgoing wire transfer to Fairplay for $100,000.00 on April 22, 2014, which was a payment towards the settlement amount.

*Ataro, LLC Pay Off to Fairplay and Current Ownership of SUBJECT RESIDENCE*

28. Counsel for Fairplay told the affiant that the Manager was unable to obtain a mortgage for the SUBJECT PROPERTY, but that Ataro, LLC paid the remaining balance of $358,000.00 to Fairplay on or about September 5, 2014. Counsel for Fairplay advised these funds originated from an Individual Retirement Account (IRA) belonging to T.M. (Beneficiary). The investigation revealed the Beneficiary is likely the father of the Trustor. A Deed of Trust was filed in King County on September 4, 2014, between the Manager, the Beneficiary, and the Trustee, CW Title Insurance Company. The Deed

AFFIDAVIT OF SPECIAL AGENT BENJAMIN WILLIAMSON
*U.S. v. Real Property Located at 2731 Boylston Ave. East # 301* - 12

1  of Trust stated that the Manager conveyed the SUBJECT PROPERTY to CW Title

2  Insurance Company, with power of sale, for a loan from the Beneficiary for $358,000.00.

3  **CONCLUSION**

4       29.    Based upon the foregoing, I believe that the purchase of the SUBJECT

5  RESIDENCE located at 2731 Boylston Avenue East, Unit 301, Seattle, WA 98102 was

6  derived from proceeds traceable to violations of federal criminal laws of 18 U.S.C.

7  §1343 (Wire Fraud), and therefore is subject to forfeiture pursuant to 18 U.S.C. §

8  981(a)(1)(C). Further, the SUBJECT RESIDENCE was involved in financial

9  transactions designed to conceal or disguise the source and control of the proceeds of

10  wire fraud, and therefore the SUBJECT PROPERTY is subject to forfeiture pursuant to

11  18 U.S.C. § 981(a)(1)(C), as well.

12  //

13  //

14  //

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF SPECIAL AGENT BENJAMIN WILLIAMSON
*U.S. v. Real Property Located at 2731 Boylston Ave. East # 301* - 13

1        I declare under penalty of perjury under the laws of the United States of America

2    that the foregoing is true and correct.

3        Executed on January 29, 2015.

4

5

6    Benjamin Williamson, Special Agent

    Federal Bureau of Investigation

7

8        SUBSCRIBED and SWORN to before me this _____ day of January, 2015,

9    by Special Agent Benjamin Williamson.

10

11

12   Print: _____

    Notary Public in and for the

13   State of Washington, residing

14   at _____

    Expires: _____

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF SPECIAL AGENT BENJAMIN WILLIAMSON

*U.S. v. Real Property Located at 2731 Boylston Ave. East # 301 - 14*